**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|  |  |
|---|---|
| In re: | Chapter 13 |
| CAROL L. WAECHTER | Case No. 09-44966-MSH |
| Debtor. | |

**MEMORANDUM OF DECISION ON CHAPTER 13 TRUSTEE'S
OBJECTION TO CONFIRMATION OF THE DEBTOR'S
AMENDED CHAPTER 13 PLAN**

This matter came before me for hearing on the objection of Denise M. Pappalardo, the standing Chapter 13 Trustee, to confirmation of the Debtor's amended Chapter 13 plan. The Trustee argues that the amended plan fails to provide for the unsecured creditors to receive the Debtor's entire projected disposable income and that in any event the plan is not proposed in good faith. The Debtor disagrees.

The parties' dispute stems from a premarital agreement entered into on April 7, 2008 by the Debtor and her then fiancé, Joao Da Silva, in which the couple agreed to keep their property and financial obligations entirely separate throughout their marriage.[1] Subsequently, on November 2, 2009, the Debtor, but not her now husband Mr. Da Silva, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101-1532). In her amended Schedule I the Debtor lists combined monthly income after payroll deductions for herself and Mr. Da Silva of $7,453.46, which includes Mr. Da Silva's net income of $1,348.[2] In Schedule J the Debtor lists

---

[1] The premarital agreement was submitted by the Debtor as an exhibit to the Debtor's reply to the Trustee's objection to confirmation of the plan and has not been challenged by the Trustee as being collusive or fraudulent. To the extent relevant, I will rely on its provisions.

[2] The Debtor listed substantially lower income in Schedule I than on Form B22. I rely on the

1

her monthly expenses including a line item of $1,309.46 described as "Spouse's prerogative, pursuant to premarital agreement, not to share income." This expense has the practical effect of offsetting all but $38.57 of Mr. Da Silva's income included in Schedule I thus leaving the Debtor with only $119 per month in disposable income to fund her Chapter 13 plan. The plan provides no dividend to general unsecured creditors.

Bankruptcy Code § 1325(b)(1)(B) provides that if a trustee objects to plan confirmation the court may not confirm the plan unless the plan provides for all of the debtor's projected disposable income received during the life of the plan to be applied to make payments to unsecured creditors under the plan. The Trustee argues that the disposable income figure which is the basis for the Debtor's proposed plan payment is significantly understated, and thus violative of Section 1325(b)(1)(B), because while the Debtor includes her husband's income in Schedule I, she backs virtually all of it out in Schedule J, effectively giving her husband a free ride on all marital living expenses.

To rule on the Trustee's objection that the Debtor fails to dedicate her true projected disposable income to her plan, I turn first to the Bankruptcy Code, which defines "disposable income" as the "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent of the debtor, charitable contributions, and other items. Bankruptcy Code § 1325(b)(2). "Current monthly income" is defined as "the average monthly income from all sources that the debtor <u>receives</u> . . . without regard to whether such income is taxable income. . ." (emphasis added). Bankruptcy Code § 101(10A). Courts are generally in agreement that in order to be considered

---

lower amount because it better reflects the Debtor's projected disposable income. See <u>In re Kibbe</u>, 361 B.R. 302, 312 (B.A.P. 1st Cir. 2007).

part of the debtor's current monthly income, and, therefore, included in the disposable income calculation, income from a non-filing spouse to help cover household expenses must actually be received by the debtor. See, e.g., In re Quarterman, 342 B.R. 647 (Bankr. M.D. Fla. 2006).

In a typical case where spouses pool some or all of their income to pay for joint household expenses, courts look at the amount of pooled household expenses and assume that the non-filing spouse contributed a proportional amount of his or her income to the debtor for paying such expenses. See, e.g., In re Mathenia, 220 B.R. 427, 431 (Bankr. W.D. Okla. 1998). In the present case, however, the Debtor concedes that her husband does not contribute anything to the household expenses. Accordingly, since the Debtor does not actually receive any income from Mr. Da Silva, her plan satisfies the requirements of § 1325(b)(1)(B).

The inquiry does not end there, however, and as the Trustee correctly points out, the Debtor must still satisfy the separate good faith requirement of Bankruptcy Code § 1325(a)(3). The majority of courts in this circuit apply a "totality of the circumstances" test in evaluating whether a plan is proposed in good faith. In re Torres Martinez, 397 B.R. 158, 166 (B.A.P. 1st Cir. 2008).

Where questions of good faith arise with respect to a non-filing spouse's contribution, or lack thereof, to a debtor's disposable income in Chapter 13 cases, some courts have investigated the lifestyle choices of the non-filing spouse. Thus, for example, if the debtor received income towards household expenses from her non-filing spouse while at the same time enjoying the benefits of excessive luxury household expenses paid for exclusively by the spouse, courts have denied plan confirmation on the basis of bad faith. See In re McNichols, 254 B.R. 422, 430 (Bankr. N.D. Ill. 2000). On the other hand, if it is clear that the non-filing spouse is using his surplus income substantially to pay his own obligations, and is not otherwise subsidizing the

3

debtor's luxury lifestyle while the debtor's creditors take it on the chin, then courts will find the debtor's plan to be filed in good faith.  See In re Nahat, 278 B.R. 108 (Bankr. N.D. Tex. 2002).

Section 1 of the premarital agreement provides that each party will pay his or her own debts and that neither party is to be held liable for the debts of the other in any way.  Given this restriction, the Debtor may in good faith propose a plan in which she is solely responsible for the mortgage payment on the marital home, title to which remains solely in the Debtor's name.  This analysis, however, does not extend to a plan in which the Debtor purports to pay all other joint household expenses while her husband pays nothing.

Unlike the Debtor's mortgage payment, nothing in the premarital agreement requires that the couple not share general household expenses of the marital home.  While the agreement clearly requires that the couple not share their income, it does not address how they will divide the joint day-to-day expenses of their married life.  Therefore, the Debtor may not rely on the premarital agreement as justification for taking full responsibility for paying household expenses, effectively subsidizing her husband's income at the expense of her creditors.

According to Schedule J, the Debtor pays a total of $520 per month for utilities, water, sewer, cable, telephone and internet expenses.  As the co-occupant of the marital home, Mr. Da Silva benefits from each of these expenses.  In addition, the Debtor pays $649 per month for home maintenance and food, further benefitting Mr. Da Silva.  In order to interpret Schedule J in a manner most favorable to the Debtor, I will assume that the Debtor's expenses for an additional telephone (presumably a mobile phone), clothing, transportation and health care costs,[3] are solely for her benefit.  This results in monthly household expenses which benefit both spouses of

---

[3] The premarital agreement provides that each spouse will pay his or her own medical expenses.

4

$1,169. If Mr. Da Silva were to contribute a proportional share of his income towards these expenses from which he benefits, the Debtor's projected disposable income would increase to $330 per month. If he were to contribute a full 50% share of these expenses, the Debtor's disposable income would jump to $703.50. In either circumstance, the Debtor could propose a plan providing for a significant dividend to her general unsecured creditors.

While I do not have the authority to order Mr. Da Silva to pay his share of the marital expenses, I can, and do, find that based on the totality of the circumstances, the Debtor's plan, in which she proposes to pay a disproportionate amount of the couple's shared household expenses, is not proposed in good faith. I will sustain the Trustee's objection to confirmation of the plan.

A separate order will enter.

Dated: October 22, 2010                                By the Court,

                                                       Melvin S. Hoffman
                                                       U.S. Bankruptcy Judge